TODD KENNEDY
    tkennedy@lionelsawyer.com
**LIONEL, SAWYER & COLLINS**
300 SOUTH FOURTH STREET, SUITE 1700
LAS VEGAS, NV  89101
TELEPHONE:        (702) 383-8965

IRWIN R. GILBERT [Admitted *PRO HAC VICE*]
    igilbert@bizlit.net
**GILBERT | YARNELL**
11000 PROSPERITY FARMS ROAD, SUITE 205
PALM BEACH GARDENS, FLORIDA 33410
(561) 622-1252 – PHONE
(561) 799-1904 – FAX

ATTORNEYS FOR DEFENDANT
QUEPASA CORPORATION

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHELLE KAFFKO, | ) CASE NO.: 2:11-CV-01253-JCM-LRL |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) **DEFENDANT'S EMERGENCY MOTION** |
| | ) **TO QUASH SUBPEONAS ISSUED BY** |
| QUEPASA CORPORATION | ) **PLAINTIFF TO NON-PARTIES BINBIT,** |
| | ) **INC. AND NEUSTAR, INC.** |
| DEFENDANT. | ) |
| | ) |
| | ) |

COMES NOW, Defendant, QUEPASA CORPORATION, by and through undersigned counsel,

and files this Emergency Motion to Quash Subpoenas Issued by Plaintiff to Non-Parties Binbit,

Inc., and Neustar, Inc., and states:

1.      The instant motion is submitted on an emergency basis because the Motion To

Quash Subpoenas would be rendered moot if the Motion was decided in the normal time frame.

2.      On September 9, 2011, prior to the discovery conference required by Rule 26,

Plaintiff issued two subpoenas for the production of documents.  Plaintiff issued one to non-party

BinBit, Inc., copy attached at Exhibit A, and another to Neustar, Inc., copy attached at Exhibit B.

3.      Defendant seeks to quash these subpoenas because (A) Defendant did not enter

into a written stipulation for the issuance of these subpoenas as required by Rule 26(d)(1) for a

1   subpoena to be served before the discovery conference has occurred, (B) Plaintiff failed to

2   provide adequate notice to Defendant prior to issuing the subpoenas as required by Rule

3   45(b)(1), and (C) the subpoenas are unduly burdensome under Rule 45(c) because they seek

4   irrelevant information.[1]

5

6   **(A)      Background.**

7   4.      Plaintiff sued Defendant claiming that Defendant sent unwanted text messages en

8   masse to Plaintiff and others using a system capable of generating random numbers in violation

9   of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et. seq.*  See ¶ 4 of the

10  Complaint [DE 1].   There is only one incident identified in the Complaint that details what

11  Defendant's allegedly did to violate the TCPA.  The allegations are:

12

13      11          16.      For instance, on or about August 19, 2008, Plaintiff's cell phone rang,

        12      indicating that a text call was being received.

14      13          17.      The "from" field of such transmission was identified cryptically as "79545,"

15      14      which is an abbreviated telephone number known as an SMS short code that was licensed

16      15      and operated by Defendant's agents.  The body of such text message read:

        16

17      17                  QUEPASA.COM INVITES YOU TO DOWNLOAD A FREE
                            GAME OF YOUR CHOICE, JUST SEND OK TO 79545
18      18                  TO ENJOY YOUR GAME AND HAVE SOME FUN!

19      19          18.      The use of an SMS short code by Defendant and/or its agents enabled

20      20      Defendant's mass transmission of wireless spam to a list of cellular telephone numbers.

        21          19.      On information and belief, Plaintiff has received subsequent spam text

21      22      messages from Defendant and/or its agents in knowing violation of Plaintiff's privacy.

22      23          20.      At no time did Plaintiff consent to the receipt of the above-referenced text

23      24      message or any other such spam text message advertisement from Defendant.

24  ¶¶ 16-20 of the Complaint [DE 1].

25

26      [1] As explained in greater detail, Defendant offered to enter into a stipulation with the

27  plaintiff to conduct limited discovery and suggested that the plaintiff work out an agreed motion
    to obtain leave of the Court.  Defendant asked to reach an agreement on the scope of the
    discovery.  Instead, plaintiffs have acted unilaterally.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5.      After learning of this lawsuit, Defendant immediately began making inquiries amongst its staff to determine whether it had sent this message or authorized someone to do so. Defendant maintains a database of telephone numbers and other information regarding certain of the users of Defendants' website.  At registration, members are asked if they want to receive text messages from Quepasa.  Some members provide their express consent and their cellphone numbers to Quepasa.  This information is maintained in Quepasa's database. Defendant only uses these numbers to contact its members.  It does not have the capability to randomly generate telephone numbers for that purpose.  Moreover, after reviewing its records, Defendant determined that it never had use of the 79545 "Short Code" identified in the Complaint, that it had never authorized the offending text message to be sent to anyone, and that it had never offered a free game download to recipients of text messages.[2]

6.      Perplexed as to how this message was connected to it, Defendant requested that the Plaintiff disclose certain information regarding the text message so it could investigate the matter further.  Defendant advised the Plaintiff that it did not have use of the short code used to send plaintiff the offending text message and that Quepasa had never offered free game downloads through any text ever sent to its members.  Defendant urged the Plaintiff to confirm this information and dismiss its case.

7.      Plaintiff's counsel disclosed that he had learned that the 79545 Short Code was currently assigned to a company called "BinBit".  However, the offending text message was alleged sent more than three years ago.  There is no reason to believe that BinBit had use of the sender short code at that time.  Defendant proposed that a stipulation be entered into with Court approval to allow plaintiff to serve a subpoena on a company called "Neustar, Inc." which

---

[2] These facts are found in the Declaration of Louis Bardov, Chief Technology Officer of defendant Quepasa which is filed in support of Defendant's Motion To Dismiss.

1  maintains a registry of short code numbers and the assigned users.  The purpose of the subpoena

2  would be to determine the identity of the assignee of the short code number used to send the

3  offending text message to the Plaintiff on August 19, 2008.

4      8.      Defendant also sought an enlargement of time to respond to the Complaint so it

5  could make an appropriate investigation of the facts before responding.  That investigation

6  included getting certain facts from non-party Neustar.  Both parties wanted such discovery, albeit

7  for different reasons.  Although discussed at length the parties never came to an agreement on

8

9  the scope of the subpoenas to BinBit and Neustar.

10      **(B)     The Subpoenas Should Be Quashed Because They Were Served
           Without Stipulation Before The Time Allowed By Rule 26(d)(1).**

11

12      9.      In the course of conferring over the Defendant's request for an enlargement of

13  time to respond to the Complaint, Plaintiff sought an agreement to allow discovery prior to the

14  Rule 26 conference.  Presumably, Plaintiff sought this agreement to satisfy Rule 26(d)(1):

15

16      Timing.  A party may not seek discovery from any source before the parties have
       conferred as required by Rule 26(f), except in a proceeding exempted from initial
       disclosure under Rule 26(a)(1)(B), or when authorized by these rules, **by
       stipulation**, or by court order.

17

18  Fed. R. Civ. P. 26(d)(1)(emphasis added).

19      10.     Although Defendant indicated its willingness to enter into a stipulation for the

20  issuance of a subpoena to nonparties Binbit and Neustar, no such stipulation was ever finalized.

21  Defendant and Plaintiff discussed the filing of a motion to engage in this non-party discovery.

22  Defendant also wanted to see the exact subpoena that would be issued to non-parties before

23  agreeing to the service of any such subpoena.  In that way, Defendant could make its objections

24

25  known prior to the issuance of the subpoena and could withhold its consent until those objections

26  were resolved.

27      11.     When the motion to enlarge time was originally drafted and passed between

28

counsel, it contained as part of the relief it sought a motion to allow discovery from non-parties. The non-party discovery aspect of the motion was discussed by counsel but no agreement could be reached as to the language of the discovery that would be allowed.  Ultimately this aspect of the motion to enlarge time was dropped from the motion when no agreement could be reached and when local counsel for the Defendant informed the Defendant's lead counsel that the local practice required separate motions to be filed if more than one form of relief is sought by a motion.  Defendant's counsel made it clear that the onus was upon Plaintiff's counsel to propose a stipulation for discovery:

> Dear Mr. Ochoa:
>
> Attached is a word version of our current motion which deletes any reference to the discovery issues. If you desire to file a motion to allow discovery outside the Rule 26 time limits, please send us a proposal. Mr. Kennedy advises that it is the local practice to not do motions when there is an agreement but instead to do a stipulation of the parties which the court signs as an order at the bottom.
>
> Thank you.
>
> Bryan J. Yarnell, Esq.

See Exhibit C hereto, email from Bryan J. Yarnell, Esq., to John Ochoa, Esq.  There being no stipulation to allow discovery before complying with Rule 26(a), the subpoena could not be served absent obtaining leave of court to do same.  *See* Fed. R. Civ. P. 26(d)(1).

12.    Although the parties had discussed the issuance of a subpoena as part of the motion to enlarge time, the motion to enlarge time was separately made due to local practice and custom.  Moreover, it is clear from the parties' discussions that no final agreement had been reached on the discovery.  It was also made clear to Plaintiff that Defendant would not stipulate to unbounded discovery.  Instead Defendant would only agree to limited discovery.  As such, Defendant wanted to review the subpoenas before they were issued so it could work with Plaintiff to develop a set of requests that were acceptable to both parties.  That is why Defendant

asked Plaintiff to provide a draft motion.

**(C)     The Subpoenas Should Be Quashed Because Plaintiff Failed to Give Adequate Notice of the Subpoenas Before Issuing Them.**

13.     Instead of drafting a motion or stipulation to allow the discovery or providing copies of the subpoenas for Defendant to review, Plaintiff simply sent a notice of issuing the subpoenas and served the subpoenas within an hour or two of the service of the notice.  See Exhibit D hereto.  Defendant timely objected to the scope of the subpoenas believing that Plaintiff was asking for Defendant's agreement to the service of the subpoenas.  See Exhibit E (series of emails strings).  In response, Plaintiff revealed that the subpoenas had been served the same day that Plaintiff issued the notice to Defendant.  See Exhibit E.  This was improper.

14.     Even had there been an agreement to the issuance of the subpoena, Plaintiff should have given reasonable notice to Defendant of the subpoena before serving it as required by Rule 45(b)(1):

> If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party.

*See* Fed. R. Civ. P. 45(b)(1).  The Advisory Committee Notes to the rule explains why this notice requirement was added in 1991:

> A provision requiring service of prior notice pursuant to Rule 5 of compulsory pretrial production or inspection has been added to paragraph (b)(1). **The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things.** Such additional notice is not needed with respect to a deposition because of the requirement of notice imposed by Rule 30 or 31. But when production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced.

See Fed. R. Civ. P. 45, Advisory Committee Note to 1991 amendment of subsection (b).

One District Court has held:

> A party issuing a subpoena to a non-party for the production of documents during discovery must provide prior notice to all parties to the litigation. [citations

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

omitted] The term "prior notice" means notice prior to service of the subpoena on the non-party, rather than prior to document production. [citations omitted] The purpose of prior notice is to afford other parties an opportunity to object to the production or inspection and to obtain the materials at the same time as the party who served the subpoena.

*Coleman-Hill v. Governor Mifflin Sch. Dist.*, 271 F.R.D. 549, 552 (E.D. Pa. 2010).

15.    Because Plaintiff gave notice of the subpoena late on a Friday, there was no time to consider the subpoenas and object to them before Plaintiff issued the subpoenas and had them served.[3]   Since there is no opportunity to otherwise formally object under the rules, this motion had to be filed:

A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash. Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial,* ¶ 11:2291 (2005 rev.) (emphasis in original); *see also Pennwalt Corp. v. Durand-Wayland, Inc.,* 708 F.2d 492, 494 n. 5 (9th Cir.1983) ("Once the person subpoenaed objects to the subpoena ... the provisions of Rule 45[c] come into play.").

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005).

16.    In addition to not giving adequate notice as envisioned by the rule, Plaintiff's conduct in issuing the subpoena without comment from Defendant was contrary to the initial discussions of the parties whereby Defendant sought to review the subpoena before it was issued.

17.    Plaintiff did serve the subpoenas by U.S. mail and that package was received on September 19, 2011 in the offices of undersigned counsel and by Todd Kennedy, Esq.

**(D)     The Subpoenas Should Be Quashed Because They Are Unduly Burdensome.**

18.    Rule 45(c)(3) governs the scope of a subpoena and it allows the Court to quash or modify a subpoena if the subpoena "subjects a person to undue burden," Fed. R. Civ. P. 45(c)(3)(A)(iv), or requires a party to disclose "a trade secret or other confidential research,

---

[3] It matters little, but defendants lawyers Irwin Gilbert and Bryan Yarnell were engaged in trial of an adversary proceeding in Tampa, Florida when notice of the subpoenas was served by e-mail.

1  development, or commercial information," Fed. R. Civ. P. 45(c)(3)(B)(i).  Rule 45 does not have

2  all of the language of Rule 26 on the scope of allowable discovery by use of a subpoena.

3  However, the Commentary to the 1970 revision of Rule 45 makes clear that the limitations on

4  discovery to non-parties are the same as the limitations on discovery to the parties under the

5

6  other rules pertaining to discovery:

> The reference to Rule 26(b) is unchanged but encompasses new matter in that
> subdivision.  The changes make it clear that the scope of discovery through a
> subpoena is the same as that applicable to Rule 34 and the other discovery rules.

7

8

9  See Fed. R. Civ. P. 45, Advisory Committee Note to 1970 amendment.

10  19.    In this instance, the subpoenas to BinBit and Neustar are overly broad in that they

11  seek information about time periods that are not relevant to this lawsuit and about text messages

12  that are not relevant to this lawsuit.   The subpoenas appear to be fishing expeditions for

13  Plaintiff's counsel to identify potential class plaintiffs, not for this case, but for other cases that

14  Plaintiff's counsel might want to bring against other defendants.  The requests make this clear.

15

16  20.    The subpoena to BinBit requests the following documents:

17  DUCUMENT REQUEST NO. 1
All Documents and ESI Related To All Text Messages sent by You or on
18  Your behalf using the Shortcode "79545" containing the term "Quepasa"
from January 1, 2008 to the present.  All Documents produced in response
19  to this request shall identify the following:

20      a.    the date of transmission of the Text Message(s)

21      b.    the Third-Party assigned the Shortcode;

22

23      c.    the Content of the Text Message(s);

24      d.    the Cellular Telephone number(s) to which the Text
       Message(s) were sent;

25      e.    the Delivery Status of the Text Message(s) sent.

26

27  DOCUMENT REQUEST NO.  2
All documents and ESI Related to or referencing the company Quepasa
28  and/or any of its products or services.  This Document Request includes
but is not limited to:

a. All Documents and correspondence between You and Quepasa concerning the transmission of Text Messages; and

b. All contracts, agreements, or understandings between You and Quepasa.

DOCUMENT REQUEST NO. 3
All documents and ESI identifying and Persons You contracted with to send Text Messages on Your behalf from Shortcode 79545, including but not limited to any cellular telephone company, aggregator, or other intermediary.

See Exhibit A hereto.

21.    The subpoena to Neustar, Inc., requests the following documents:

DOCUMENT REQUEST NO. 1
All Documents in Your possession and/or control that constitutes, manifests, contains, incorporates, reflects, pertains, indicates, discusses, mentions, and/or concerns the application for Shortcode 79545 from January 1, 2008, to present.

See Exhibit B hereto.

22.    These requests are overly broad.  They seek matter which is entirely irrelevant to the claims made in this case.  Although "relevance" is not listed in Rule 45(c)(3), courts have found that relevance is an appropriate consideration under the undue burden prong of the rule:

Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena. *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter,* 211 F.R.D. 658, 662 (D.Kan.2003). Specifically, under Rule 45(c)(3)(A), "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party[,]" *Travelers Indem. Co.,* 228 F.R.D. at 113, and, in particular, requires the court to consider:

'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'

*Id.* (quoting *IBM,* 83 F.R.D. at 104).

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)

**(E)**     **Sanctions Should Be Awarded Against Plaintiff For The Bringing Of This Motion Because Plaintiff Would Not Voluntarily Withdraw Its Subpoena After Plaintiff Was Told There Was No Agreement To It.**

23.     This Court has the authority to sanction a party for discovery misconduct.

"It is well-established that the scope and conduct of discovery are within the sound discretion of the trial court." *Guinan v. A.I. duPont Hosp. for Children,* No. 08–228, 2008 WL 938874, at *1 (E.D.Pa. Apr.7, 2008) (quoting *Marroquin–Manriquez v. INS,* 699 F.2d 129, 134 (3d Cir.1983)). Courts have the inherent authority to ensure that parties abide by the Federal Rules of Civil Procedure, protect the integrity of the judicial system, and prevent abuse of the judicial process. *Mid–Atlantic Constructors Inc. v. Stone & Webster Constr., Inc.,* 231 F.R.D. 465, 467 (E.D.Pa.2005) (quoting *Spencer,* 1999 WL 33957391, at *4). Through the ability to sanction, courts may "impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Spencer,* 179 F.R.D. at 487 (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

"Sanctions must, of course, be proportionate to the violation." *Mid–Atlantic Constructors,* 231 F.R.D. at 467 (holding that admonishment of counsel and the payment of attorney's fees for an intentional, bad faith violation of the subpoena power was proportionate). In determining which sanctions are appropriate, courts consider the resulting prejudice, the need for deterrence, and the furtherance of policy objectives. *Id.*

*Coleman-Hill v. Governor Mifflin Sch. Dist.*, 271 F.R.D. 549, 552 (E.D. Pa. 2010)

24.     Here, Plaintiff's counsel had ample opportunity to withdraw his subpoenas without need of this motion.  Plaintiff's counsel simply refused to do so.  Plaintiff's counsel was told that if Plaintiff did not withdraw the subpoenas, that this motion would have to be filed.  See Exhibit E.  Plaintiff's counsel was told that there was no agreement to the subpoenas.  Plaintiff's counsel was aware that Defendant's position is and always has been that a motion had to be filed to authorize the issuance of the subpoenas.  So, there could be no implied agreement for the issuance of the subpoenas.

25.     Under these circumstances, the Plaintiff ought to be sanctioned for the fee and costs related to this motion.

**CERTIFICATE OF CONFERENCE**

26.     On September 9, 2011, undersigned counsel received an e-mail from John Ochoa, Esq., an attorney with Edelson McGuire in Chicago, Illinois which contained the subpoenas which are the subject of this motion.  Defendant's counsel responded by e-mail to ask whether the subpoenas had already been served on the witnesses.  No immediate response was received.

27.     On Monday September 12, 2011, Mr. Ochoa advised that the subpoenas were served on Friday, September 9, 2011.  Defendant's counsel immediately objected and advised Mr. Ochoa that the subpoenas were overbroad and beyond the scope of our discussions.

28.     In particular, Defendant's Counsel advised Mr. Ochoa that he had not complied with the Federal Rules by serving the witnesses on the same day as copies of the subpoenas were supplied to opposing counsel.  Unfortunately, Mr. Ochoa took the position that emailing the subpoenas to defendant and serving the subpoenas a few hours later complied with the Federal Rules of Civil Procedure.  Defendant suggests that at best this is a "sharp" practice, but at worst, it appears to be an intentional design to impair the defendant or drive up its costs.

29.     Undersigned counsel asked Mr. Ochoa to withdraw the subpoenas.  Mr. Ochoa refused.

30.     However, the Edelson McGuire firm are not the attorneys of record for the plaintiff in this case…John Benedict, Esq. of Las Vegas, Nevada is.  On September 15, 2011, Defendant's Co-Counsel Todd Kennedy and Irwin Gilbert telephoned Mr. Benedict in an effort to confer before filing the instant Motion.  Mr. Benedict was not in and we left a message asking Mr. Benedict to call either Mr. Kennedy or Mr. Gilbert.  A second call was made later that day by Mr. Kennedy.  Mr. Benedict did not return either call as of the time this Motion was filed electronically.  I sent a letter to Mr. Benedict advising of our efforts to confer and inviting him to try and resolve the dispute with me even after the Motion was filed.  See Exhibit F.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WHEREFORE, Defendant respectfully requests that this Court enter an Order quashing the subpoenas issued by Plaintiff to BinBit & Neustar and granting sanctions against in the amount of attorneys' fees incurred by the Defendant due to Plaintiff's issuing the subpoena without agreement of the parties.

DATE: SEPTEMBER 15, 2011          Irwin R. Gilbert, Esq.
                                  GILBERT | YARNELL
                                  11000 PROSPERITY FARMS ROAD, STE. 205
                                  NORTH PALM BEACH, FL 33410
                                  TELEPHONE:     (561) 622-1252


                                  BY: ____/S/_____
                                      Irwin R. Gilbert
                                      Attorney for Defendant Quepasa Corporation

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on Thursday, September 15, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically transmitted notices of electronic filings.

DATE: SEPTEMBER 15, 2011    Irwin R. Gilbert, Esq.
GILBERT | YARNELL
11000 PROSPERITY FARMS ROAD, STE. 205
NORTH PALM BEACH, FL 33410
TELEPHONE:    (561) 622-1252

BY: ____/S/_____
Irwin R. Gilbert
Attorney for Defendant Quepasa Corporation