IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 11-CV-81235-KAM

MICHELLE KAFFKO, individually and on
behalf of a class of similarly situated individuals,

                              *Plaintiff,*

                v.


QUEPASA CORPORATION, a Nevada
corporation, BINBIT FACTORY, S.L., a
Spanish corporation, and BINBIT, INC., a
Florida corporation,

                              *Defendants.*

_____/

### PLAINTIFF'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11

Pursuant to Fed. R. Civ. P. 11, Plaintiff Michelle Kaffko moves for an order imposing

appropriate sanctions against Defendant Quepasa Corporation ("Quespasa") and its lead counsel

Irwin Gilbert ("Mr. Gilbert"), for filing and prosecuting their most recent Motion for Sanctions

(dkt. 149, the "Motion")[1] against Plaintiff and several of her counsel associated with the law firm

Edelson McGuire, LLC.

The Motion lacks all required factual and legal support, a conclusion that is all the more

startling given the grave and, indeed, unprecedented sanctions that the Motion seeks.  This lack of

support was known to both Quepasa and Mr. Gilbert.  The Court's imposition of sanctions against

_____

[1]  Plaintiff also moves for Rule 11 Sanctions based on Quepasa's previous motion for sanctions
filed on August 23, 2012.  That motion sought monetary relief based on a discovery order
violation and was untimely under Local Rule 26.1(h).  (*See* dkt. 142.)  Quepasa did not withdraw
that motion even after Plaintiff opposed it and filed a motion to strike it, but, instead, filed its
second Motion for Sanctions on October 19, 2012, which is substantively very similar to the
previous motion—a clear concession that the first motion was untimely and improper.  While the
false statements made in that first motion for sanctions are not specifically the subject of
Plaintiff's instant Rule 11 Motion, the instant Rule 11 Motion does also seek sanctions for
responding to Quepasa's first frivolous motion for sanctions.

Quepasa and its counsel is all the more warranted when the Court learns, below, of Mr. Gilbert's own misconduct that materially impaired the prosecution of Plaintiff's claims, and what appears to be his pattern and practice of seeking extraordinary sanctions against attorneys and counsel during and at the conclusion of cases merely because they represented the interests of opposing parties.

In further support of these positions and the requested relief, Plaintiff states as follows:

## INTRODUCTION

In seeking significant disciplinary and other sanctions against Plaintiff and her counsel, the Motion's fundamental argument is that Plaintiff and her counsel knew her claims had no legal or factual merit.  Quepasa specifically claims that the text message Plaintiff testifies she received "did not exist" or, if it did, "never referred to Quepasa."  (Def.'s Mot. at ¶ 15.)  Quepasa does not cite to a single piece of evidence to support these accusations.  Instead, Quepasa relies on its oft-repeated chorus that it "did nothing wrong," and on a discovery dispute involving the production of Plaintiff's cell phone that was resolved by this Court more than five months ago.

The actual evidence that was before this Court is undisputed on all of the salient points.  Namely, Plaintiff  did indeed receive a text message on the date alleged in the Complaint from the short code licensed to Defendant Binbit Factory, S.L.  This is demonstrated by the documents provided by Neustar, Inc.  (Dkt. 128-1, at pg. 17) and by Plaintiff's telephone bills that she has produced.  Further, in a sworn declaration made under penalty of perjury, Plaintiff testified that she received the specific text message – that expressly references Quepasa – just as is alleged in the Complaint.  While Quepasa and Mr. Gilbert have chosen to pretend this evidence does not exist, this Court has already found this evidence created factual issues requiring the defeat of Quepasa's and Gilbert's serial requests for entry of summary judgment.  (*See* Transcript of June 5, 2012, Dkt. 136, at pg. 33.)

2

Yet, Plaintiff was ultimately forced to abandon her claims due to the Defendant's drastic efforts to evade liability undertaken by Quepasa and, more troubling, its counsel.  These included (i) Quespasa's decision to dissolve during these proceedings, (ii) the election of the Binbit defendants to dissolve within days of their formal joinder as party defendants, and shortly after Mr. Gilbert himself acknowledged that he had had one or more conversations with Binbit's President (or, as represented by Mr. Gilbert, Binbit's "counsel") (Declaration of John C. Ochoa ("Ochoa Decl.") ¶ 15, at Resp. to Request Nos. 24 & 25.), and (iii) third-party MX Telecom's refusal to produce transmission log data of the text messages at issue in response to Plaintiff's subpoena after Mr. Gilbert repeatedly and falsely represented to MX Telecom's counsel that Quepasa had initiated proceedings to quash the subpoena in the United States District Court for the District of Delaware.

Plaintiff and her counsel do not take the instant Rule 11 Motion lightly—despite Mr. Gilbert's pattern and practice throughout this litigation and over his career, all as will be demonstrated below, of threatening and filing sanctions motions.  Plaintiff and her counsel file this Motion only because it has become absolutely necessary based on the intolerable conduct and intentional misrepresentations made by Quepasa and its counsel.  Quepasa, and its counsel Mr. Gilbert, apparently do not care about the facts or the law—particularly when they get in the way of the "narrative" that they are trying to create.  This is why they have attempted to turn a discovery dispute into a vast conspiracy theory and why they have persisted with their meritless and blatantly misleading Motion *filed months after Plaintiff sought to voluntarily dismiss her case*, and apparently designed for no other purpose than to impugn the reputations of Plaintiff and her counsel.

**ARGUMENT**

I.    **Quepasa and Gilbert Have Violated Rule 11 by Knowingly Making False and Misleading Statements in Their Motion for Sanctions And Throughout This Litigation.**

Quepasa makes numerous false statements in its Motion, some of which are of a most serious nature, with others made apparently to provide supplemental support for its manufactured theory about Plaintiff's motivations for bringing this lawsuit.  These statements are conspicuously unsupported by any evidence in the form of declarations or exhibits, but rather consist of nothing more than Mr. Gilbert's unfounded opinions that certainly do not constitute legitimate evidence and, even more unfortunately, should not even be presumed to be trustworthy.[2]

A.    **Legal Standard**

The Eleventh Circuit recognizes three specific types of conduct that warrant Rule 11 sanctions: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and

---

[2]   In a previous disciplinary proceeding against Gilbert, a court found his testimony to be "not credible." *See Matter of Irwin R. Gilbert*, 194 A.D.2d 262, 263 (N.Y. Ct. App. 1993) (finding the testimony of [Gilbert] "not credible" and suspending him for one year for "engaging in conduct that adversely reflects on his fitness to practice law.")  This suspension was extended to the District of Columbia.  *In re Gilbert*, 719 A.2d 95 (D.C. Cir. 1993).  In another sanctions motion brought by Mr. Gilbert in a separate case, a federal district court denied the sanctions motions (which were, as with this case, filed *after* the matter had otherwise been concluded) and found Gilbert's arguments to be "without merit" and called his contentions "ridiculous."  *See* Order on Mot. for Sanctions, *Klein-Becker LLC, et al., v. William Stanley, et al.,* No. 03-cv-871, Dkt. 277 (W.D. Tex. Dec. 28, 2005) (also attached as Ex. B to Pl.'s Reply in Support of Motion to Strike, Dkt. 146-2.)  Earlier in that same case, the presiding judge threatened to enter an order relieving Mr. Gilbert of his ability to represent his client before that court.  (Attached as Ex. C to Pl.'s Reply in Support of Motion to Strike, Dkt. 146-3.)

Since Gilbert's admission to practice law in the State of Florida, he was subjected to a $46,000 judgment under Florida's "Rule 11" analogue statute (§ 57.105(1) (1999 Amend.)) for persisting in claims not supported by material facts (Ochoa Decl. ¶ 20), and is currently the subject of at least one State Bar complaint.  *See Cordell Funding LLLP v. Jenkins*, No. 9:11-cv-80988 KLR (S.D. Fla.), Dkt. 14 (Jan. 27, 2012, Letter from Joel D. Jenkins to the Court containing State Bar Complaint.)

4

that cannot be advanced as a reasonable argument to change existing law; and (3) when the party

files a pleading in bad faith for an improper purpose." *Pelletier v. Zweifel,* 921 F.2d 1465, 1514

(11th Cir.); Fed. R. Civ. P. 11(b).  Where a pleading, motion, or other paper evinces conduct in

direct violation of Rule 11, "a district judge shall or *must* impose sanctions" upon the signing

attorney and/or party represented.  *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993).

In analyzing conduct under Rule 11, courts apply an objective standard that includes

"reasonableness under the circumstances," a standard "more stringent than the original good-faith

formula." *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (citing Rule 11 Advisory

Committee Note.); *Hashemi v. Campaigner Publications, Inc.,* 784 F.2d 1581, 1583 (11th

Cir.1986).  This requires that a court determine "whether a reasonable attorney in like

circumstances could believe his actions were factually and legally justified."  *Kaplan v.

DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).  Courts do this by engaging in a

two-step inquiry: "(1) whether the party's claims are objectively frivolous; and (2) whether the

person who signed the pleadings should have been aware that they were frivolous."  *Baker v.

Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).  Whether the signor should have been aware of the

frivolous nature of his claims depends on "whether he would have been aware had he made a

reasonable inquiry."  *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

Where a filing demonstrates a "deliberate indifference to obvious facts," or proceeds in the

face of facts or law that renders the filing frivolous, Rule 11 sanctions are absolutely warranted.

*Bautista v. Star Cruises*, 696 F. Supp. 2d 1274, 1278 (S.D. Fla. 2010); *Feingold v. Budner*, CIV

08-80539, 2010 WL 917314, * 4 (S.D. Fla. Mar. 11, 2010).  This approach is reinforced by The

Florida Bar's Rules of Professional Conduct, which also require that "[a] lawyer shall not

5

knowingly . . . make a false statement of fact or law to a tribunal." *Bautista*, 696 F. Supp. 2d at 1278 (citing Fla. Bar Rule 4-3.3(a)(1)).

Both the Eleventh Circuit and courts in this District have found Rule 11 sanctions to be warranted where filings either omitted relevant facts or where parties proceeded with a filing in the face of obvious and contrary evidence. *See Bautista*, 696 F. Supp. 2d at 1279 (sanctions appropriate where party failed to inform the Court of the existence of settlements and signed releases, showing a "deliberate indifference to obvious facts"); *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1332 (11th Cir. 1992) (sanctioning defendant where its counterclaim alleged bad faith on the part of plaintiff, including the claim that there was "simply no evidence" to support plaintiff's claim, when in fact court found there to be ample evidence).

In addition to deficient factual or legal filings, Rule 11 sanctions also apply to motions filed for an improper purpose, such as duplicative motions that serve only to restate or re-argue prior claims. *Thomas v. Evans*, 880 F.2d 1235, 1243 (11th Cir. 1989). Courts have also imposed Rule 11 sanctions where parties have filed motions deemed to be no more than "frivolous dilatory tactic(s) intended to harass the Plaintiffs and not asserted with good faith." *Ortho Pharm. Corp. v. Sona Distributors, Inc.*, 117 F.R.D. 170, 173 (S.D. Fla. 1986) *aff'd sub nom. Ortho Pharm. Corp. v. Sona Distributors*, 847 F.2d 1512 (11th Cir. 1988). Still another improper purpose that warrants subjecting litigants to potential sanctions occurs when a party "insist(s) upon a position after it is no longer tenable." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).

### B.   Gilbert and Quepasa Committed Disciplinary Violations to Conceal Relevant Evidence that Implicates Quepasa.

Quepasa's Motion claims that Plaintiff's claims were completely manufactured, and that she never received a text message containing the word "Quepasa." (Def. Mot. at ¶ 15.) Not only have Quepasa and Mr. Gilbert failed to make a reasonable inquiry into these false statements, they

have taken affirmative steps in this litigation to conceal the fact that thousands of text messages bearing the name "Quepasa" were transmitted in August 2008 by Binbit. The Court need not rely on Plaintiff's assertions on this matter—Mr. Gilbert put his misrepresentations into writing in the form of emails, which are attached to the Declarations supporting this Motion.

In May 2012, Plaintiff issued a subpoena on third-party MX Telecom, Inc., a company known as an "aggregator" that maintains records of text message transmissions from "shortcodes," including the shortcode identified in this case. This discovery was narrowly tailored to ascertain the class of individuals Plaintiff sought to represent in this case, confirm the identical nature of the text message content sent to each class member, and also demonstrate that numerosity had been satisfied, as per Fed. R. Civ. P. 23. Specifically, the subpoena was limited only to text messages transmitted via the specific shortcode at issue in this case (79545), during 2008 and containing the term "Quepasa."[3] (Dkt. 124-1.)

Fifteen days after Plaintiff issued her subpoena on MX Telecom out of the U.S. District Court for the District of Delaware (where MX Telecom is located), Quepasa moved to quash the subpoena in this Court. On June 18, 2012, Plaintiff's counsel sent an email to MX Telecom inquiring as to the status of MX Telecom's search for documents. (Ochoa Decl. ¶ 3.) During a subsequent telephone conversation, MX Telecom informed Plaintiff's counsel that it would not respond to the subpoena until the Motion to Quash was resolved. (*Id.*) As outlined in Plaintiff's

---

[3] Plaintiff was hoping to issue this third-party subpoena on MX Telecom earlier in the litigation, and Plaintiff requested third-party discovery in her proposed limited discovery order. (*See* Dkt. 74, pg. 6.) However, Quepasa's premature motions for summary judgment resulted in the Court's entry of a limited discovery order that precluded third-party discovery. Thus, Plaintiff was unable to issue this third-party subpoena until many months into this case after the Court denied Quepasa's Renewed Motion for Summary Judgment and granted Plaintiff's Motion for Leave to File Amended Complaint and to Reset Summary Judgment Briefing and Discovery Schedule. (Dkt. 93.)

opposition brief, Quepasa's Motion to Quash – its second one filed (and denied) in this litigation – completely lacked merit and was procedurally improper.  (*See* Dkt. 128.)[4]

On June 28, 2012, Magistrate Judge Brannon held a hearing on Quepasa's Motion to Quash.  During the hearing, Quepasa's counsel, Bryan Yarnell of Gilbert Yarnell P.C., argued that the Court had jurisdiction to rule on Quepasa's motion to quash (despite the subpoena being issued out of Delaware), and said that "**if the Court disagrees with us, then when I am finished with this conversation I will direct my staff to change the caption of the pleading and file it in Delaware today . . .**" (Dkt. 133 at pg. 6, ln. 12.)  During that hearing, Magistrate Brannon denied Quepasa's Motion to Quash, correctly finding that the Defendant filed its motion in the wrong jurisdiction because it should have been filed in the District of Delaware.  (Dkt. 132.)  However, Quepasa's counsel's "promise" went unfulfilled—despite Quepasa's counsel's affirmative statement directly to Magistrate Brannon that a motion to quash would be filed in Delaware that very day, no such motion was filed that day—or any day thereafter.  (Ochoa Decl. ¶¶ 4-5.)  Mr. Gilbert then proceeded to make numerous false statements to third-party MX Telecom:

**First False Statement:**

Mr. Gilbert sent an email to MX Telecom on June 29, 2012, one day after this Court denied Quepasa's Motion to Quash for lack of jurisdiction, stating as follows,

---

[4]  The deficiencies in the Motion to Quash cannot be overstated.  First and foremost, it was filed in this Court, the wrong one, as the subpoena was issued out of the District of Delaware.  Second, Quepasa's claims that the subpoena was overbroad were frivolous—Quepasa previously made the same argument in a motion to quash based on a different subpoena containing an almost identical request.  The Court in the Nevada District Court that initially presided over this case before its transfer to this Court denied that motion and found the scope of the subpoena proper.  (*See* Dkt. 24.)  Third, Quepasa lacked standing to even file that motion to quash, as it had previously represented that it had no connection at all with MX Telecom but then sought to quash the subpoena for fear that MX Telecom would produce information relating to Quepasa's customers.  (*See* Dkt. 128.)

> **We are filing our motion to quash in Delaware today.  We have engaged local counsel for this purpose.**  We will also file our motion to stay.

(June 29, 2012 email from Gilbert to MX Telecom counsel Diane Kownacki, attached to Ochoa Decl. at ¶ 7) (emphasis added).  This statement, which echoed Mr. Yarnell's statement to the Magistrate Judge, has been subsequently revealed to be a false statement that could only have been designed to buy Quepasa time and persuade MX Telecom not to search for and produce relevant documents that would implicate Quepasa in this case.

**Second False Statement:**

Plaintiff's counsel (unaware at the time of Mr. Gilbert's June 29 email to MX Telecom) informed that company's attorney of Magistrate Brannon's ruling.  (Ochoa Decl. ¶ 8.)  Then, incredibly, on July 17, 2012, when Plaintiff believed that MX Telecom was searching for the relevant documents that were being stored overseas, Mr. Gilbert sent another email to MX Telecom's counsel that stated as follows:

> Can you tell me the status of your compliance with the subpoena?  We have filed our objection to the Magistrate's ruling and our motion to stay in Florida **and our Delaware counsel has filed a motion to quash as well.**  Have Kaffko's lawyers responded to you regarding the labor and expense associated with attempting to comply with the subpoena?

(July 17, 2012 email from Gilbert to Diane Kownacki, attached to the Ochoa Decl. at ¶ 9) (emphasis added).  Two things are clear from this email: First, Mr. Gilbert's statement concerning Quepasa filing a motion to quash in Delaware is patently false, and second, Mr. Gilbert believed that the data requested in Plaintiff's subpoena did in fact exist and then sought to influence, if not persuade, MX Telecom to object to the subpoena based on burden.

**Third False Statement:**

One month later, on July 26, 2012, Plaintiff's counsel made inquiries with MX Telecom on the status of its search for documents overseas.  MX Telecom responded by inquiring into the

status of a motion to quash that it said was pending in <u>Delaware</u>.  (Dkt. 139-1, at pg. 48, Ex. 6.)

Plaintiff's counsel was perplexed by this response, as no motions had been filed in Delaware,

despite Defense counsel's representation to the Court that they would file one.  Plaintiff's counsel

investigated the matter by calling the District of Delaware Clerk of Court and also by searching

PACER online and confirmed that no motion to quash was filed by or on behalf of Quepasa in the

District of Delaware.  (Ochoa Decl. ¶¶ 4-5.)  Plaintiff's counsel relayed this fact to MX Telecom's

attorney, who responded that "Quepasa counsel said motions are pending in Delaware" and that "I

was informed that the law firm of Morgan Lewis and Bockius filed a motion in Delaware at the

end of June.  Quepasa confirmed motion was pending as of yesterday."  (Dkt. 139-1, at pg. 49,

Ex. 6.)

 In fact, one day earlier, on July 25, 2012, Mr. Gilbert had reaffirmed to MX Telecom that

a motion to quash was pending in Delaware:

> **I understand that the motion is pending in both courts (Delaware and Florida) and that neither court has taken action.**  I am in the middle of a trial in Miami and will try to contact chambers to see why argument was not set.

(July 25, 2012 email from Gilbert to Diane Kownacki, attached to Ochoa Decl. at ¶ 9.) (emphasis

added.)  This email constituted the **<u>third time</u>** over a month-long period that Mr. Gilbert falsely

informed MX Telecom that a motion to quash was pending in Delaware.  There is no room for

confusion as to Gilbert's representations to MX Telecom.  He was unequivocal in his repeated

statements that a Motion to Quash was pending in Delaware.  He even gave details to legitimize

his statements, such as Quepasa having retained the law firm "Morgan, Lewis & Bockius" in

Delaware that had supposedly filed the phantom motion to quash, and that the Court in Delaware

had not yet taken action.

 Plaintiff's counsel informed MX Telecom that despite these repeated and specific

statements by Quepasa's counsel, no motions were pending in Delaware, that this Court had already denied Quepasa's motion to quash, and that it should respond to the subpoena.  (Dkt. 139-1, at pg. 49, Ex. 6.)  By that time, Quepasa, through its frivolous motion practice, and Mr. Gilbert, through his blatant and intentional misrepresentations to MX Telecom, frustrated Plaintiff's discovery of relevant information by almost three months, and prevented MX Telecom from even seeking data residing overseas or in its backup systems.  (Ochoa Decl.¶ 10.)

Based on the language of the subpoena request, and Mr. Gilbert's conversations with MX Telecom, the conclusion cannot be avoided that Mr. Gilbert and Quepasa knew that MX Telecom's response to Plaintiff's subpoena would show that Binbit Factory S.L. transmitted thousands of text messages to consumers (including the Plaintiff) containing the name "Quepasa." Why else would Mr. Gilbert and Quepasa resort to such dilatory and sanctionable conduct to avoid this information being produced?  At the very least, the data would likely have been dispositive as to the content of the message and the number of messages sent, yet Quepasa not only showed no interest in determining the truth, it actually went to great lengths to prevent the truth from ever being revealed.

This conduct is now directly at issue because of the implications it has for Quepasa's statements in its most recent Motion for Sanctions.  Mr. Gilbert's misrepresentations to MX Telecom blocked access to evidence that would show the content of the text messages.  Rule 11 requires attorneys to make reasonable inquiry into statements they make in signed pleadings and papers.  Not only did Mr. Gilbert fail this standard, he went so far as to mislead third-parties to prevent the production of evidence that would undermine his manufactured theories.  In other words, Mr. Gilbert's misrepresentations and delay tactics with MX Telecom allowed him to state (albeit without any actual evidentiary support) that no text message ever existed that referenced

Quepasa.  This conduct is sanctionable on several levels.

These misrepresentations are violations of Rules 4-3.4(a),(f) and Rule 4-4(a)), of the

Florida Rules of Professional Conduct, which state as follows:

> A lawyer shall not:  (a) unlawfully obstruct another party's access to evidence or
> otherwise unlawfully alter, destroy, or conceal a document or other material that
> the lawyer knows or reasonably  should  know is  relevant  to  a  pending  or
> a reasonably foreseeable proceeding; nor counsel or assist another person to do any
> such act.

> Florida Rule of Professional Conduct 4-3.4(a).
> > *        *        *
> A lawyer shall not:  (f)  request a person other than a client to refrain from
> voluntarily giving relevant information to another party unless:
> (1) the person is a relative or an employee or other agent of a client, and
> (2) it is reasonable to believe that the person's interests will not be adversely
> affected by refraining from giving such information.

> Florida Rule of Professional Conduct 4-3.4(f).
> > *        *        *
> In the course of representing a client a lawyer shall not knowingly:
> > (a) make a false statement of material fact or law to a third person; or
> > (b) fail to disclose a material fact to a third person when disclosure is
> > necessary to avoid assisting a criminal or fraudulent act by a client, unless
> > disclosure is prohibited by rule 4-1.6.  Rule 4-4(a).

Florida Rule of Professional Conduct 4-4(a).

In addition, attorneys interfering with otherwise validly-issued subpoenas is contrary to

the Federal Rules of Civil Procedure, and courts have the inherent authority to punish such

abuses.  *See Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 793 (E.D. Pa. 2012).  Finally, this

conduct is sanctionable under Rule 11 because attorneys are required to make a "reasonable

inquiry" into the basis for their assertions.  Not only was this not done with respect to MX

Telecom, but the evidence shows that Quepasa and Mr. Gilbert through improper means actively

tried to <u>prevent</u> from ever being produced evidence that could contradict their theories on this

case.

**C.**    **Quepasa Falsely Claims that Plaintiff Never Received a Text Message Referencing "Quepasa."**

Quepasa and Mr. Gilbert have persisted in arguments that run <u>directly</u> <u>counter</u> to the evidence adduced in this case, and, as shown above, run directly counter to the facts known to Mr. Gilbert through MX Telecom. Rule 11 is violated when parties persist in arguments while ignoring facts and evidence on the record. *See Bautista*, 696 F. Supp. 2d at 1279.  In addition, Mr. Gilbert and Quepasa had a duty to make a "reasonable inquiry" into the assertions they make in their Motion. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).  Not only was no "reasonable inquiry" made, Gilbert ignored all evidence to the contrary and blocked access to relevant evidence through misrepresentations.

The most serious false statement Quepasa makes in its Motion appears at Paragraph 15 and is premised on Quepasa's false assertion that Plaintiff never actually received the text message alleged in the Complaint, and that the text message referencing "Quepasa" did not exist:

**¶ 15: "It is now plain that the plaintiff's lawyers were concealing the fact that the alleged offending text message . . . a message purportedly sent by Quepasa . . . did not exist.  It is apparent that the message was not on Kaffko's cellphone when the lawsuit was commenced It is almost certain that the text message was intentionally deleted from Kaffko's phone. The only logical reason for deleting the message would be to destroy evidence that the text message never referred to Quepasa."**

To make such a serious charge without any evidence, and when in fact the evidence already adduced shows the exact opposite, is sanctionable.  Quepasa's primary basis for asserting that Plaintiff's claim is vexatious is because the shortcode from which the texts were sent was licensed to Defendant Binbit Factory, S.L., and not Quepasa.  But Quepasa misses the point and in the process displays a complete lack of understanding of what is required to maintain an action under the TCPA and a willful ignorance of the facts.

Plaintiff provided sworn testimony on April 9, 2012, confirming that the text message she

received referenced the Defendant Quepasa, and was sent from shortcode "79545." (*See* Dkt. 104-2). Plaintiff's telephone bills that she produced in this case confirm that she received the text message from shortcode 79545, the same shortcode licensed by Binbit Factory S.L., one of the Defendants in this case. (*Id.*) Plaintiff further stated under oath that: "Over the course of the last several years, I have received numerous unsolicited text message advertisements, including the one at issue in this litigation." (*Id.* ¶ 2.) Plaintiff stated that her cellular telephone bills identify the exact date that she received a text message from shortcode "79545," which she says "was the Quepasa text message identified in my lawsuit[.]" (*Id.* ¶ 3.) As this Court recognized, this is enough to maintain an action against Quepasa:

> THE COURT:  Well, they have a text message that has your client's name associated with it so - -
>
> *** Interruption by Defense Counsel ***
>
> THE COURT: But how would they have known anything other than what they saw in the text message?  What could they have done before they filed suit to investigate whether or not this actually came from them or from someone else without having this code or whatever it is that you say shows that your client didn't send it?
>
> *          *          *
>
> THE COURT:  Well, I guess I'm concerned about ruling in a summary judgment forum which is a binding decision that would let you [Quepasa] out now only later to find out when they conduct discovery of Binbit or the Binbit Spanish company that there is a connection and then it's too late.

(Dec. 19, 2011 Hearing, Dkt. 70, at pp. 21-24.)

The Court was completely correct in its observation that discovery on the Binbit entities would be necessary to determine Quepasa's ultimate liability.  Liability under § 227(b)(3) of the TCPA is established when a person or entity "makes" a call using an ATDS.  *Kramer v. Autobytel, Inc,* 759 F. Supp. 2d 1165, 1169 (N.D. Cal. 2010).  A party cannot avoid liability by simply hiring another company to transmit text messages.  *In re Jiffy Lube Inter., Inc. Text Spam Litigation*, 847 F. Supp. 2d 1253, 1256-57 (S.D. Cal. 2012).  In fact, the Ninth Circuit has

14

implicitly accepted that an entity can be liable under the TCPA even if it "seemed to play no role in physically sending the messages." *Id.* (citing *Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2009)); *see also Kramer*, 759 F. Supp. 2d at 1170 ("courts have held both advertisers and advertisement broadcasters subject to liability under the TCPA.").

Due to a coordinated dissolution of the Binbit entities shortly after Plaintiff was granted leave to amend, however, Plaintiff was unable to serve them with process, despite best efforts, including the hiring of a private investigator and service via the Hague Convention.  (Ochoa Decl. ¶¶ 13-14.)  Plaintiff always had a basis in law and fact for pursuing this action against Quepasa and, in fact, the Court even acknowledged that Plaintiff's testimony regarding the content of the message creates factual issues:

> THE COURT: Okay.  So you don't have any physical evidence as to what the message says, you'll have her word as to what it says.  I understand that creates a factual question as to what it says or didn't say[.]

(Transcript of June 5, 2012 Dkt. 136, at pg. 33.)

Quepasa ignores the evidence presented by Plaintiff showing the content of the text message and pretends it doesn't exist.  Instead, Quepasa makes the bald assertion that the text message "did not exist" and "never referred to Quepasa."  Persisting in motions and arguments with no factual support, and in the face of contradictory evidence, is sanctionable.  Gilbert and Quepasa affirmatively knew that this text message campaign occurred and that the messages referred to "Quepasa" by name and, at the very least, they have intentionally ignored the evidence to the contrary.  This is why Mr. Gilbert misled MX Telecom into not producing the data.

### D.     Quepasa and Mr. Gilbert Failed to Make a Reasonable Inquiry Before Making Their False Statements.

Quepasa and Mr. Gilbert have had several opportunities to seek evidence to confirm the assertion that they make in their latest motion for sanctions, but have failed to do so.  This lack of reasonable inquiry is an aggravating factor that compels the imposition of sanctions.  *See*

*Worldwide Primates, Inc.*, 87 F.3d at 1254.

First, Quepasa (and Mr. Gilbert) could have determined the content of the text messages by making inquiries with MX Telecom.  But as outlined above, Mr. Gilbert instead repeatedly misled MX Telecom so that it <u>wouldn't</u> produce the documents that would identify the content of the text messages.  In addition to being sanctionable conduct that violates the Florida Rules of Professional Conduct, this conduct makes a mockery of Rule 11's "reasonable inquiry" requirement.  As outlined in § I.B *supra*, Mr. Gilbert and Quepasa clearly knew, or at least strongly feared, that the text message transmitted from shortcode 79545 in August 2008 to Plaintiff and the class members contained the term "Quepasa," and that the data existed in MX Telecom's backup storage facilities overseas.  This is why Quepasa and Mr. Gilbert resorted to frivolously moving to quash and making misrepresentations to prevent the production of the data.

Second, Quepasa had an opportunity to confirm with Binbit itself the content of the text message at issue.  In March 2012, Mr. Gilbert spoke with a person that was represented in Quepasa's discovery responses to be Binbit's "counsel."  (Ochoa Decl. ¶ 15, at Resp. to Request Nos. 24 & 25.)[5]  Despite referencing this conversation in its responses to Plaintiff's document requests and attempting to use this conversation to tell Plaintiff's counsel that the claim against Quepasa was unsupported, Mr. Gilbert refused (based on the attorney work-product doctrine) to disclose any details about this conversation.

Rather interestingly, Mr. Gilbert was willing to communicate to Plaintiff's counsel what

---

[5]  Upon request, Mr. Gilbert later identified the name of the person at Binbit with whom he spoke, which revealed that, in fact, he had spoken with Binbit's President (and not its attorney). It is not entirely clear whether Mr. Gilbert intentionally misrepresented the status/position of this person to Plaintiff's counsel, although it is difficult to believe one could confuse the President of a company with its attorney.  But regardless of intent, Mr. Gilbert made this false statement as to his discussion with Binbit's "attorney" and relied on it when he chose to withhold information about the conversation on the improper basis of the attorney work-product doctrine.

Binbit's President "didn't say" during his conversation.  That is, while Mr. Gilbert refused to provide the objective details of the conversation based on the attorney work-product doctrine, he did editorialize by telling Plaintiff's counsel that Binbit's President "didn't say" that Binbit had Quepasa's permission to use the name "Quepasa" in any outbound text messages.  (Ochoa Decl. ¶¶ 16-17; Meyers Decl. ¶4.)  Mr. Gilbert also said that Binbit's President "didn't say" that there was an engagement between Quepasa and Binbit to send text messages.  (Ochoa Decl. ¶¶ 16-17; Meyers Decl. ¶4.)  Of course, the obvious implication from Mr. Gilbert's statements (if they can be believed at all) is that the text message received by Plaintiff <u>did</u> refer to Quepasa.  Indeed, if Binbit's President affirmatively told Mr. Gilbert that Binbit did not send any text messages or that Binbit never sent a text message referencing "Quepasa," there is absolutely no reason why Quepasa and Mr. Gilbert wouldn't trumpet that fact (and, at the very least, inform Plaintiff's counsel of that fact).  Because of Mr. Gilbert's lack of candor about this conversation, Plaintiff does not know the full extent of Binbit's knowledge.

If Binbit's President told Mr. Gilbert that Binbit did, in fact, transmit the text message at issue (regardless of whether Quepasa "authorized it"), then Quepasa's statement in the Motion that the text message did not reference Quepasa was knowingly and intentionally false and misleading.  If, on the other hand, Mr. Gilbert did not even ask Binbit's President whether Binbit sent the message and whether it contained the terms "Quepasa," then there could be absolutely no reasonable excuse for Mr. Gilbert to fail to make such inquiry before asserting in the Motion that, in fact, the message never mentioned Quepasa.

### E.     Quepasa's Motion Contains Additional Statements Easily Proven False by a Cursory Records Search.

Quepasa and Mr. Gilbert also make additional false statements in the Motion in order to give some color of credibility to their outrageous claims.  These misrepresentations include the

following:

**¶ 5:  "Defendant Quepasa maintained no offices or operations in Nevada . . . the selection of a Nevada forum appeared designed to harass and inconvenience defendant Quepasa and is part of the vexatious approach of the plaintiff's lawyers."**

It is unknown why Quepasa would present a statement that is so easily proven false by a simple search of available public records.  At the time Plaintiff initiated this lawsuit, Quepasa Corporation was incorporated in the State of Nevada.  Additionally, the Nevada Secretary of State listed Quepasa's President, Michael Matte, and Treasurer, John Abbott, as having addresses at 2533 N. Carson Street, Carson City, NV 89706.  (Ochoa Decl. ¶ 18.)  Further, the Nevada Secretary of State's website identified Quepasa's registered agent as being a Nevada company located in Carson City, Nevada.  (*Id.*)  The point is not only that it was entirely proper for Plaintiff to initiate this suit in Nevada, but that Quepasa's statements to the contrary are intentionally false.

**¶ 9:  "Kaffko served the subpoena on Neustar but never served the subpoena on Binbit. Kaffko's lawyers claimed there were unable to find Binbit to serve the subpoena in Miami, Florida.  This was odd since Binbit, Inc. had designated Sergio Nunez as its registered agent, as has hundreds of other Florida corporations."**

Once again, Quepasa has made a statement to this Court that a cursory search of public records shows to be false.  According to the Florida Secretary of State, Luis Agramunt, <u>not</u> "Sergio Nunez," is Binbit, Inc.'s registered agent.  (Ochoa Decl. ¶ 19.)  It was on this identified registered agent that Plaintiff made multiple attempts to serve Binbit, Inc. with process. Quepasa's cavalier disregard of the facts is rather stunning, particularly when Quepasa and its counsel are attempting to rely on these misrepresentations in their effort to tarnish the reputation of Plaintiff's attorneys.

## II.    Quepasa's Previously-Filed and Still Pending Motion for Sanctions is Frivolous and Deserving of Sanctions.

On August 23, 2012, Quepasa filed its first motion for sanctions, not as a separate motion, but rather as a part of its opposition to Plaintiff's otherwise unrelated Motion for Voluntary

Dismissal.  As explained in detail in Plaintiff's Motion to Strike Defendant Quepasa Corporation's Motion for Sanctions (dkt. 142), and Plaintiff's Reply in Support of her Motion to Strike Defendant Quepasa Corporation's Motion for Sanctions (dkt. 146), Quepasa's motion was frivolous and sanctionable because it was procedurally improper, was not filed in front of the Magistrate, and was grossly untimely.  Quepasa's request for sanctions was brought pursuant to Fed. R. Civ. P. 37(d), which addresses sanctions for refusing to produce a party for deposition.  However, Local Rule 26.1(h) states that discovery-related motions must be filed within 30 days from the "occurrence of grounds for the motion."  Quepasa's motion for sanctions was based on a discovery dispute from March 2012 and was, thus, untimely by at least four months.  While desperately trying to re-characterize its motion as an effort to enforce a previous court order, Quepasa was never able to offer any legitimate basis as to why it filed its motion five months after the discovery dispute at issue.

The procedural improprieties with the previous motion for sanctions, and the fact that it was obviously untimely, render Quepasa's first motion for sanctions itself sanctionable as a matter of law.  But what is particularly egregious is the undisputed fact that Quepasa (or at least its counsel) was well-aware of the applicable Local Rule and the fact that its motion was untimely, as Quepasa's counsel only *days* before had a very similar motion for sanctions in an unrelated case denied on the same grounds.  (Dkt. 146-1 (citing *Allstate Ins. Co. v. Federal Savings Bank, et. al.*, Case No. 12-600-77-Cohn-Seltzer (S.D. Fla.)).

In short, Quepasa chose to file an improper and frivolous motion for sanctions against Plaintiff after she had moved to voluntarily dismiss her case.  Plaintiff was forced to expend the time to oppose the motion and file a motion to strike and a reply in support thereof because Quepasa decided to ignore the Local Rules with which it was already very well-acquainted.  But

rather than withdrawing the frivolous motion, Quepasa just decided to file a second Motion for Sanctions based on the same general arguments made in the first one—an apparent concession that the first motion lacked any merit.  Consequently, the first motion for sanctions has been fully briefed and remains pending.  The Court should strike that motion for sanctions, or deny it outright, and sanction Quepasa and its counsel for filing such a knowingly improper motion.

## CONCLUSION

Quepasa and Mr. Gilbert make numerous statements in their latest sanctions Motion that have no basis in fact.  As shown above, Quepasa's and Mr. Gilbert's claims ignore the evidence on the record in this case, and contradict evidence easily obtainable from public records.  While the law requires attorneys to make "reasonable inquiry" into their assertions, the facts here show that Quepasa and Irwin Gilbert not only failed to make any inquiry into their assertions, but purposefully misled third-parties in an effort to frustrate the production of evidence that would have exposed the repeated assertions as untrue.  Quepasa and Mr. Gilbert should be sanctioned for their false statements, and this Court should investigate the conduct of attorney Irwin Gilbert, attorney Bryan Yarnell, the law firm of Gilbert Yarnell P.C., and Quepasa in blocking Plaintiff's ability to gather evidence in this case.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(1)     That this Court exercise its inherent authority and refer Irwin Gilbert and Bryan Yarnell to the Committee on Attorney Admissions, Peer Review, and Attorney Grievance based on their actions in this case pursuant to this Court's authority under Rule 3(a) of the Rules Governing Attorney Discipline;

(2)     That Plaintiff be awarded attorneys' fees for responding to Quepasa's Motion for Sanctions (Dkt. 149); and

(3)     That Plaintiff be awarded attorneys' fees for responding to Quepasa's previously-filed and pending motion for sanctions, as well as attorneys' fees for preparing the instant Rule 11 Motion.

20

/s/ David P. Healy
David P. Healy (940410)
Evan M. Meyers (admitted *pro hac vice*)              2846-B Remington Green Circle
John Ochoa (admitted *pro hac vice*)                   Tallahassee, Florida 32308
EDELSON MCGUIRE, LLC                                Tel:  850-222-5400
350 North LaSalle Street, Suite 1300                    Fax: 850-222-7339
Chicago, Illinois 60654                                 dhealy@davidhealylaw.com
Tel: (312) 589-6370
Fax: (312) 589-5378

                                                    *Counsel to Plaintiff*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3) AND FED. R. CIV. P. 11

I HEREBY CERTIFY that on November 3, 2012, consistent with Fed. R. Civ. P.

11(c)(2), I served the foregoing motion on Irwin R. Gilbert and Bryan Yarnell, counsel for

Defendant Quepasa Corp., via electronic mail and facsimile.  This Motion is now being filed

because 21 days have passed and Quepasa has not withdrawn or corrected the filings that are the

subject of this Motion.

/s/  David Healy

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing *Plaintiff's Motion

for Sanctions Under Fed. R. Civ. P. 11* was filed using the Court's CM/ECF filing system on

November 28, 2012, which will cause a copy to be electronically transmitted to all counsel of

record.

/s/  David Healy